[Cite as *In re R.S.*, 2013-Ohio-5569.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

IN THE MATTER OF: :
:
R.S., :
:
Adjudicated Dependent :
Child. : Case No. 13CA22
:
:
: DECISION AND JUDGMENT ENTRY
:

_____

APPEARANCES:

COUNSEL FOR APPELLANT: Lynn W. Turner, P.O. Box 385, Hillsboro, Ohio 45133

COUNSEL FOR APPELLEE: Anneka P. Collins, Highland County Prosecuting Attorney,
and Molly Bolek, Highland County Assistant Prosecuting
Attorney, 112 Governor Foraker Place, Hillsboro, Ohio
45133

_____

CIVIL APPEAL FROM COMMON PLEAS, JUVENILE DIVISION
DATE JOURNALIZED: 12-11-13
ABELE, J.

{¶ 1} This is an appeal from a Highland County Common Pleas Court, Juvenile

Division, judgment that awarded Highland County Children Services (HCCS) permanent custody

of an eleven-month old child, R.S.

{¶ 2} L.S., the child's biological mother and appellant herein, raises the following

assignment of error for review:

> "THE TRIAL COURT ERRED IN FINDING THAT
> PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF
> THE CHILD.   THE COURT'S BEST INTEREST ANALYSIS
> WAS AGAINST THE MANIFEST WEIGHT OF THE
> EVIDENCE."

{¶ 3} On August 24, 2012, HCCS filed a complaint alleging that appellant's child is a

dependent child.   The complaint asserted that appellant gave birth to the child on August 24,

2012, and that appellant's other child, T.T., previously was adjudicated a dependent child and had been placed in a Planned Permanent Living Arrangement.[1]   The complaint further alleged that appellant had two prior convictions for unlawful purchase of pseudoephedrine.

{¶ 4}   Also on August 24, 2012, HCCS filed a motion for emergency temporary custody, which the court granted.

{¶ 5}   On October 12, 2012, the trial court adjudicated the child a dependent child and awarded HCCS temporary custody of the child.

{¶ 6}   On January 22, 2013, HCCS filed a motion to extend temporary custody for six months and HCCS asserted that appellant "has made significant progress on her case plan [but] continues to use illicit substances."   HCCS further alleged that appellant "has not been consistent in visiting with R.S." and that her last visit occurred on December 10, 2012.

{¶ 7}   On February 21, 2013, the guardian ad litem filed her report and recommendation.  The GAL noted that until December 4, 2012, appellant "was doing very well in her attempts to complete a case plan in this matter."   The GAL observed that appellant (1) "successfully completed IOP program at Family Recovery Services," (2) obtained employment, (3) obtained a home, and (4) started mental heath services.   The GAL further stated, however, that appellant "has slipped and may require some additional time."

{¶ 8}   The GAL reported that appellant has not allowed HCCS to visit and inspect her home "and may have withheld information as to where she was living for some time."   The GAL further stated that appellant "apparently discontinued her mental health services" and was "suspended from the RAP program at Family Recovery Services."   Additionally, appellant

---

[1]   T.T. is now emancipated.

admitted to using methamphetamine in early December 2012.   The GAL further observed that appellant was drinking alcohol in a vehicle with Rick Shinkle and drugs allegedly were found in the vehicle.

{¶ 9}   The GAL noted that appellant has not regularly visited the child since December 2012 and that, considering the child's young age, "frequent contact is necessary to promote bonding with a parent."   The GAL stated: "The child is more likely to be bonded to a primary care provider when a parent continues to be absent."   The GAL reported that the child "is almost six months old and has not been in the custody of his mother since his birth. * * * * He does not have the benefit of regular visits with his mother due to her choices."   The GAL thus recommended that the child's best interests would be served by remaining in HCCS's temporary custody and by allowing appellant "to continue her attempts at sobriety and stability."

{¶ 10}  On March 8, 2013, the court continued the child in HCCS's temporary custody.

{¶ 11}  On May 17, 2013, HCCS filed a motion to modify the disposition to permanent custody.   HCCS alleged that appellant abandoned the child and that awarding HCCS permanent custody is in the child's best interests.   HCCS asserted that (1) appellant did not have contact with the child for forty-five days following his birth; (2) since October 8, 2012, appellant had thirty-one available visits but attended only nine; (3) between December 11, 2012 and February 10, 2013, appellant did not have contact with the child; and (4) appellant failed to have contact with the child from February 12, 2013 through May 17, 2013.

{¶ 12}  On July 9, 2013, the GAL filed her report and recommendation.   The GAL observed that the child "is very bonded to his primary caregiver."   She further noted, however, that the child's "bonding with [appellant] was not disrupted by her long absence."   The GAL stated that she "would approve any agreement for either permanency or to continue temporary

custody."   She explained that her "primary concerns are [appellant's] recurrent drug use and her inability after several years and many opportunities involving now two children to find success in her rehabilitation."   The GAL stated that if "the parties cannot agree, [then] it is my recommendation that the Court grant the Motion for Permanent Custody."

{¶ 13} On July 10, 2013, the court held a hearing regarding HCCS's permanent custody motion.   Sergeant Matt Landrum testified that on February 5, 2013, he stopped a vehicle in which appellant was a passenger.   Landrum observed an open beer can between appellant's legs.  Upon searching the vehicle, he discovered a tin beneath appellant's seat that contained methamphetamine, hydrocodone, and Percocet.   The driver of the vehicle, Rick Shinkle, stated that the drugs belonged to him.   Appellant was charged with having an open container.

{¶ 14} Family Recovery Services (FRS) Counselor Karen Chambers testified that appellant did not successfully complete her counseling.   Chambers stated that FRS recommended that appellant complete a residential treatment program.

{¶ 15} HCCS Director of Family Advocacy Center and Supervisor of Foster Adoption Melissa Wheaton testified that: (1) since October 3, 2012, appellant has had forty-three visits available to her but has attended only fifteen; (2) between December 10, 2012 and February 11, 2013, appellant did not visit with the child; and (3) between February 12, 2013 and May 30, 2013, appellant did not visit with the child.   Wheaton stated that in the six weeks leading up to the permanent custody hearing, appellant has been visiting regularly and has interacted appropriately with the child.

{¶ 16} GAL Susan Zurface Daniels testified and explained her concerns as follows:

"My biggest concern with regard to this situation would be that her older child, for whom I am also the appointed Guardian ad Litem, was in a similar

circumstance for several years, and [appellant] was unable during numerous opportunities to be able to get herself sober and maintain that sobriety for a period of time to insure the safety of that teenage child. And in the circumstance, we are dealing with a child who is an infant, nearing toddler-hood, who would be unable to protect himself in a manner that her daughter would have been able to several years ago.

That being said, I have noted that there are no parenting concerns, hands-on ability to care for this child are very adequate. I noted through my interviews and through my observation that there does not appear to be a disruption in the parent bond with the child and his mother. The child is not resistant to her efforts to feed him, to care for him, during my observation with him."

{¶ 17} The GAL stated that her "greatest concern is [appellant's] past history with her older child." The GAL further testified that appellant's failure to have any contact with the child for 106 days "weighs heavily against [appellant]." The GAL stated that she "lean[s] slightly towards permanency as being the best interest of the child at this time."

{¶ 18} HCCS caseworker Kayla Smith testified that between December 4, 2012 and May 31, 2013, she was unable to locate appellant, despite numerous attempts at home visits and phone calls.

{¶ 19} The child's foster mother, Sondra Williamson, testified that she feels "very bonded" with the child and that the child is bonded with the foster father. She stated that the child interacts positively with a two-year old foster child in the home. Williamson explained that they have allowed the child's half-sister, T.T., to visit with the child and would continue to do so, as long as T.T. remained a good influence in the child's life. Williamson testified that she and her husband would "love to adopt" the child.

{¶ 20} On July 16, 2013, the trial court awarded HCCS permanent custody of the child. The court found that appellant had abandoned the child by failing to visit with or contact the child for 108 days. The court additionally determined that awarding HCCS permanent custody

would serve the child's best interests.   With respect to the child's interactions and interrelationships, the court found that appellant interacted appropriately with the child during the fifteen visits she attended since May 31, 2013.   The court further noted, however, that appellant visited with the child only fifteen times since August 24, 2012, and did not elect to visit with the child the twenty-eight other times that were available.   The court found that the child "has a strong bond to his foster family" and that "[t]he interaction and interrelationship with his foster parents and foster siblings are very positive."   The court additionally observed that the foster parents have stated that they intend to adopt the child, if HCCS is granted permanent custody.

{¶ 21}   The court noted that the GAL stated that "she was leaning toward permanent custody and in her report recommended permanent custody in the event an agreement could not be reached between the parties."

{¶ 22}   The court found that appellant failed to comply with "[t]he key component to the Case Plans" by failing to successfully complete drug counseling.   The court observed that appellant's drug assessment reveals that she needs residential treatment, but appellant does not believe she needs–and has refused–residential treatment.   The court determined that appellant "refuses to recognize the severity of her drug addiction and it is not likely she will be able to remain sober for any period of time without benefit of residential treatment."

{¶ 23}   The court noted that in December 2012, appellant had admitted that she used methamphetamine.   The court additionally observed that in February 2013, appellant had an open container of alcohol while a passenger in a vehicle and law enforcement officials discovered methamphetamine, percocet, and hydrocodone underneath her seat.   In May 2013, appellant again admitted that she used methamphetamine.

{¶ 24} The court also recognized that HCCS could not locate appellant from December 2012 through May 2012, despite phone calls and visits to appellant's home. The court stated: "Absenting herself for several months from the Agency working with her for reunification does not impress this trier of fact that the mother has a genuine interest in reunification."

{¶ 25} The court additionally considered the GAL's assessment. The GAL stated that appellant's sobriety was the main concern. Appellant had informed the GAL that she intended to continue her ten-year relationship with Rick Shinkle, who was incarcerated at the time of the permanent custody hearing. The court observed that Shinkle has been in prison on drug-related charges and that appellant admitted Shinkle "has a problem with alcohol and methamphetamine."

{¶ 26} The court then set forth the best interest factors to which it gave "great weight": (1) appellant has abandoned the child; (2) appellant "has elected not to complete her [drug] counseling and refuses to enroll in residential treatment"; (3) appellant "absented herself from contact with [the HCCS caseworker] from February 2013 through May 2013"; (4) appellant "intends to continue her relationship with Rick Shinkle"; (5) appellant "self-reported using methamphetamine December 4, 2012 and May 12, 2013. On February 5, 2013 [appellant] was in a vehicle with Rick Shinkle with alcohol in her possession and methamphetamine, percocet and hydrocodone found in a tin can underneath her seat"; and (6) "[t]he foster parents intend to adopt [the child] if the permanent custody motion is granted."

{¶ 27} The court thus found that awarding HCCS permanent custody would serve the child's best interests. The court specifically determined that the mother's obtainment of a home and employment "does not outweigh the other findings." The court further found that appellant "has exhibited an unwillingness to provide a permanent, stable home environment" and "has chosen a life of substance abuse over being a parent to her child." This appeal followed.

{¶ 28} In her sole assignment of error, appellant asserts that the trial court's judgment awarding HCCS permanent custody of the child is against the manifest weight of the evidence. Specifically, she argues that clear and convincing evidence does not support the trial court's finding that awarding HCCS permanent custody is in the child's best interests.

A

STANDARD OF REVIEW

{¶ 29} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. See In re M.H., 4th Dist. No. 11CA683, 2011-Ohio-5140, 2011 WL 4597509, ¶29; In re A.S., 4th Dist. Nos. 10CA16, 10CA17, 10CA18, 2010-Ohio-4873, 2010 WL 3903564, ¶7. Accord In re K.M., 6th Dist. No. L–12–1345, 2013-Ohio-1477, 2013 WL 1535998, ¶25; In re J.H., 11th Dist. No. 2012–L–126, 2013-Ohio-1293, 2013 WL 1294646, ¶91; In re R.G., 10th Dist. No. 12AP–748, 2013-Ohio-914, 2013 WL 988082, ¶15; In re D.W., 8th Dist. No. 98717, 2013-Ohio-272, 2013 WL 409096, ¶7.

> "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'"

Eastley v. Volkman, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶12, quoting State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th ed. 1990).

{¶ 30} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court "'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'" Eastley at ¶20, quoting Tewarson v. Simon, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Accord In re Pittman, 9th Dist. No. 20894, 2002-Ohio-2208, 2002 WL 987852, ¶¶23–24.

{¶ 31} The essential question that we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." In re K.H., 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶43. "Clear and convincing evidence" is:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."

In re Estate of Haynes, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v. Schiebel, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Accord In re Holcomb, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing Cross v. Ledford, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and

determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").
Accord In re Adoption of Lay, 25 Ohio St.3d 41, 42–43, 495 N.E.2d 9 (1986).   Cf. In re
Adoption of Masa, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact
has been "proven by clear and convincing evidence in a particular case is a determination for the
[trial] court and will not be disturbed on appeal unless such determination is against the manifest
weight of the evidence").   Thus, if the children services agency presented competent and
credible evidence upon which the trier of fact reasonably could have formed a firm belief that
permanent custody is warranted, then the court's decision is not against the manifest weight of
the evidence.   In re R.M., 4th Dist. Nos. 12CA43 and 12CA44, 2013-Ohio-3588, ¶62; In re R.L.,
2nd Dist. Nos.2012CA32 and 2012CA33, 2012-Ohio-6049, ¶17, quoting In re A.U., 2nd Dist.
No. 22287, 2008-Ohio-187, 2008 WL 185494, ¶9 ("A reviewing court will not overturn a court's
grant of permanent custody to the state as being contrary to the manifest weight of the evidence
'if the record contains competent, credible evidence by which the court could have formed a firm
belief or conviction that the essential statutory elements * * * have been established.'"); In re
J.W., 3rd Dist. No. 13–12–10, 2012-Ohio-3528, 2012 WL 3194087, ¶35, quoting In re Baby Boy
W., 3rd Dist. No. 5–10–39, 2011-Ohio-2337, 2011 WL 1944264, ¶20 ("This Court will not
overturn the juvenile court's judgment as being against the manifest weight of the evidence 'if
the record contains competent, credible evidence by which the court could have formed a belief
or conviction that the essential statutory elements for a termination of parental rights have been
established.'"); In re M.Z., 9th Dist. No. 11CA010104, 2012-Ohio-3194, 2012 WL 2874375,
¶22; In re K.N., 1st Dist. No. 120111, 2012-Ohio-2189, 2012 WL 1810178, ¶12 ("A reviewing
court will not reverse the judgment of a trial court as being against the manifest weight of the

evidence if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence.").

{¶ 32} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'"   Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting Martin, 20 Ohio App.3d at 175, 485 N.E.2d 717; accord State v. Lindsey, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 33} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. Eastley at ¶21.   As the Eastley court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

Id., quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 34} Moreover, as this court previously explained in State v. Murphy, 4th Dist. No. 07CA2953, 2008-Ohio-1744, 2008 WL 1061793, ¶31:

"It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently."

Accord Bugg v. Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, 2007 WL 1225734, ¶9. Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." Davis v. Flickinger, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). Accord In re Christian, 4th Dist. No. 04CA 10, 2004-Ohio-3146, 2004 WL 1367399, ¶7. As the Ohio Supreme Court long-ago explained: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record." Trickey v. Trickey, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case, a trial court judge may have significant contact with the parties before a permanent custody motion is even filed. In such a situation, it is not unreasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, etc., of the parties than this court ever could from a mere reading of the permanent custody hearing transcript.

B

PERMANENT CUSTODY PRINCIPLES

{¶ 35} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her

children.   Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re

Murray, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); accord In re D.A., 113 Ohio St.3d 88,

2007-Ohio-1105, 862 N.E.2d 829.   A parent's rights, however, are not absolute.   D.A. at ¶11.

Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate

welfare of the child, which is the pole star or controlling principle to be observed.'"   In re

Cunningham, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting In re R.J.C., 300 So.2d

54, 58 (Fla.App.1974).   Thus, the state may terminate parental rights when a child's best interest

demands such termination.   D.A. at ¶11.

{¶ 36}  Before a court may award a children services agency permanent custody of a

child, R.C. 2151.414(A)(1) requires the court to hold a hearing.   The primary purpose of the

hearing is to allow the court to determine whether the child's best interests would be served by

permanently terminating the parental relationship and by awarding permanent custody to the

agency.   See R.C. 2151.414(A)(1).   Additionally, when considering whether to grant a children

services agency permanent custody, a trial court should consider the underlying principles of

R.C. Chapter 2151:

> (A) To provide for the care, protection, and mental and physical
> development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family
> environment, separating the child from its parents only when necessary for his
> welfare or in the interests of public safety.

C

PERMANENT CUSTODY FRAMEWORK

{¶ 37} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 38} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶ 39} In the case at bar, appellant does not challenge the trial court's R.C. 2151.414(B)(1)(b) finding. Instead, she limits her argument to the trial court's best interest findings. Thus, we do not address the court's R.C. 2151.414(B)(1)(b) finding.

D

BEST INTERESTS

{¶ 40} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's

parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶ 41} In the case at bar, we believe that the record contains competent, credible evidence from which the trial court could have formed a firm belief or conviction that awarding HCCS would serve the child's best interests. Regarding the child's interactions and interrelationships, the evidence shows that appellant shares a bond with her child and that appellant offers the child appropriate care when they are together. Unfortunately, however, appellant did not choose to deepen that bond with her child by visiting him on a regular basis. Instead, she missed the majority of her scheduled visitations and did not have any contact with the child for over 100 days. Her lack of commitment to developing a continuous bond with her child is not a sign of a positive interrelationship with her child but instead a sign that appellant may engage in similar conduct in the future, which obviously would not be a positive effect in the child's life.

{¶ 42} In contrast to appellant's lack of commitment to developing a continuous bond with her child, the foster parents have demonstrated such a commitment. They have had the child in their care continuously since his birth. They have expressed their desire to adopt the child. Moreover, the evidence shows that the child shares a bond with the foster parents and his foster sibling and that the child interacts well with the foster family.

{¶ 43} With respect to the child's wishes, the evidence shows that the child is far too young to express his wishes. We observe that the GAL did not express a strong opinion regarding permanent custody but leaned towards recommending that the court award HCCS permanent custody.

{¶ 44} Regarding the child's custodial history, the evidence reveals that he has spent his entire life in HCCS's temporary custody and has remained in the same foster home throughout that time. He has not spent a single day in appellant's custody.

{¶ 45} With respect to the child's need for a legally secure permanent placement and whether that placement can be achieved without granting HCCS permanent custody, the evidence shows that appellant has a history of drug use and has refused the treatment recommended pursuant to her case plan. Her drug use and refusal to obtain appropriate treatment renders her unable to provide the child with a legally secure permanent placement. She may have a home, but unless appellant stops using drugs, that home is not legally secure. No evidence was presented that the child could be placed in another legally secure permanent placement without granting HCCS permanent custody.

{¶ 46} Additionally, R.C. 2151.414(E)(4) and (10) apply. Appellant demonstrated a lack of commitment to the child by failing to regularly visit the child when able to do so. The trial court found that appellant failed to visit the child for over 100 days and, thus, appellant abandoned the child.

{¶ 47} We believe that all of the foregoing factors could have produced a firm belief in the trial court's mind that awarding HCCS permanent custody of the child would serve the child's best interests. Consequently, clear and convincing evidence supports the trial court's

finding that awarding HCCS permanent custody would be in the child's best interests and the

court's decision is not against the manifest weight of the evidence.

{¶ 48} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's

sole assignment of error.

JUDGMENT AFFIRMED.

**[Cite as *In re R.S.*, 2013-Ohio-5569.]**

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.