[Cite as *In re N.J.*, 2025-Ohio-1641.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | | |
|---|---|---|---|
| In re: | N.J. | : | |
| | H.J. | : | Case No. 24CA17 |
| | S.J. | : | |
| | M.J. | : | |
| | | : | <u>DECISION AND JUDGMENT</u> |
| | | : | <u>ENTRY</u> |
| | | : | |
| | | : | **RELEASED: 05/01/2025** |

_____

APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, and Molly Bolek, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.

_____

Wilkin, J.

{¶1} Appellant, the children's father, appeals a judgment of the Highland County Court of Common Pleas, Juvenile Division, that granted Highland County Department of Job and Family Services, Children Services Division ("the agency"), permanent custody of his four children: 14-year-old N.J.; 12-year-old H.J.; 6-year-old S.J.; and 4-year-old M.J.[1]

{¶2} Appellant raises one assignment of error that asserts that the trial court's judgment placing the children in the agency's permanent custody is against the manifest weight of the evidence. After our review of the record and the applicable law, we do not find any merit to appellant's assignment of error. Therefore, we affirm the trial court's judgment.

---

[1] The ages listed above were the children's ages as of the date that the trial court entered its judgment granting the agency permanent custody of the children, October 1, 2024.

FACTS AND PROCEDURAL BACKGROUND

{¶3} On May 10, 2022, the agency received a report that S.J., who was four years of age at the time, had been wandering around Greenfield for about 40 minutes. The child was taken to the police department, and, about an hour later, the mother arrived at the police department. The mother informed an agency caseworker that, at the time S.J. was found wandering, appellant had been watching the children.

{¶4} One week later, around 3:30 a.m., law enforcement officers discovered appellant, the mother, and the four children inside a car that was in a ditch. Appellant stated that the car had run out of gas and that he had been trying to back the car into a driveway. Officers expressed concern that the parents had been "sleeping off" heroin.

{¶5} Later that day, agency caseworkers visited the mother and the children at the family's home to discuss the situation. The mother explained that the car ran out of gas, so appellant attempted to back up into a driveway. However, he apparently missed the driveway, and the car ended up in a ditch. The caseworkers conveyed their concerns about substance abuse. The mother stated that she knew that appellant used methamphetamine and that she last saw him use this drug two days earlier. Regarding her own drug use, the mother indicated that if tested, she would test positive for nonprescribed gabapentin. The caseworkers subsequently attempted to initiate a safety plan but did not identify any viable options. Thus, the children were removed from the home.

{¶6} The next day, May 18, 2022, the agency filed a complaint that alleged the children were abused, neglected, "and/or" dependent children. The complaint recited the foregoing facts and further asserted that in March 2022, the parents had been

charged with child endangering. [2]  The complaint stated that the trial court found appellant guilty and that the court dismissed the mother's case with prejudice.  The agency asked the court to place the children in its temporary custody.

{¶7} The trial court later adjudicated the children dependent and placed them in the agency's temporary custody for one year, until May 18, 2023.

{¶8} The agency developed a case plan for the family that required the parents to (1) complete drug and alcohol and mental health assessments and follow any treatment recommendations, (2) obtain and maintain stable housing, (3) obtain and maintain proof of income, (4) submit to random drug screens, and (5) complete a parenting education course.

{¶9} On the day after the court's initial temporary custody order expired, May 19, 2023, the agency filed a new complaint that alleged the children were abused, neglected, "and/or" dependent children.  The complaint alleged that the court previously (1) found the children to be dependent children and (2) placed them in the agency's temporary custody.  The agency asserted that neither parent had obtained stable housing or completed a parenting education course.  The agency additionally stated that although the mother had been testing negative for drugs, appellant has not.  The agency asked the court to place the children in its temporary custody.  The agency also asked the court to place the children in its emergency, temporary custody, which the trial court granted.

---

[2] The record does not contain the facts underlying the March 2022 child endangerment charges.

{¶10} On June 21, 2023, the parents admitted to the facts alleged in the complaint and to the allegation that the children were dependent.  They also agreed to place the children in the agency's temporary custody until May 19, 2024.

{¶11} On May 13, 2024, the agency filed a motion to modify the disposition to permanent custody.  The agency alleged that the children have been in its temporary custody for 12 or more months of a consecutive 22-month period and that placing them in its permanent custody is in their best interests.

{¶12} On September 27, 2024, the trial court held a hearing to consider the agency's permanent custody motion.  Caseworker Ivy Colville testified as follows.  The children had been in the agency's temporary custody between May 18, 2022, and May 19, 2023.  The agency "missed the deadline" to extend the temporary custody order, so, on May 19, 2023, the agency filed a new complaint and a new request for temporary custody.

{¶13} At the time of the May 2023 complaint, neither parent had completed a mental health assessment or parenting classes.  The mother completed a drug and alcohol assessment and tested negative for illegal substances.  The mother lived with a registered sex offender and knew that living with him prevented the agency from placing the children with her.

{¶14} Caseworker Aimee Waits also worked with the family and testified as follows.  The three youngest children live in the same foster home and are doing "very well."  N.J. is placed in a treatment facility for "sexualized behaviors."  Waits would be willing to work on reunifying the children with the mother if the mother did not live with a registered sex offender.

{¶15} Appellant testified and explained that he currently resides in transitional housing.  He stated that he does not intend to return to a life of drugs.  Appellant further reported that he is aware that the mother currently lives with a registered sex offender and that he does not approve of this living situation.  Appellant additionally agreed that he has not visited the children since February 2023.

{¶16} Delores Colville, a visitation monitor at the family advocacy center, testified that, between June 20, 2023, and October 2023, the mother did not visit the children.  Colville also reported that the mother attended only 23 out of 45 available visits.  Colville stated that when the mother did visit the children, her interactions were appropriate.

{¶17} The mother testified and stated that she has been living with a registered sex offender for about one year.  The mother agreed that the agency had advised her that living with a registered sex offender was "a problem."  She further acknowledged that living with this individual was not appropriate if she would like the children to be returned to her custody.  The mother indicated that she has been looking for independent housing to alleviate the agency's concern.   She explained that she has not been able to obtain low-income housing that would be large enough for the four children because she cannot obtain a larger residence through low-income housing unless the children are in her custody.  The mother conveyed her belief that she will be able to obtain independent housing and comply with one of the remaining case plan requirements—complete a parenting course—within six months.

{¶18} The foster mother of the three youngest children testified that they have been in her home since May 2023, and are doing "[g]reat."  She stated that she and her

husband are interested in adopting the three children, but they are not certain about the oldest child, N.J., due to his behavioral issues.

{¶19} The children's guardian ad litem (GAL) testified that he spoke with H.J. and S.J. The GAL reported that H.J. and S.J. informed him that they are happy in the foster home and enjoy the stability that it provides. He emphasized that the two children were "adamant" that they would like to remain in the foster home. The GAL advised the court that M.J. was too young to meaningfully express his wishes. The GAL further indicated that although N.J. is placed in a residential facility, he ultimately would like to be placed with his siblings.

{¶20} On October 1, 2024, the trial court granted the agency permanent custody of the children. The court observed that the children were placed in the agency's temporary custody on May 19, 2023, and adjudicated dependent on June 21, 2023. The court further noted that on May 18, 2022, it previously had placed the children in the agency's temporary custody and later adjudicated them dependent. The court found that the children have been in the agency's temporary custody throughout the pendency of the case and that they also were in the agency's temporary custody from May 19, 2022, through May 18, 2023, in the previous case. The court thus found that the children have been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.

{¶21} The court additionally determined that the parents have abandoned the children. The court recognized that appellant admitted that he had not had any contact with the children since February 2023. The court also pointed out that the evidence showed that, between June 20, 2023, through October 2023, the mother failed to

maintain contact with the children.  The court further noted that the mother attended only 23 out of the 45 visits that were available.

{¶22} The court next found that placing the children in the agency's permanent custody is in their best interests.  The court stated that the three youngest children are bonded with the foster family and observed that the foster parents are interested in adopting them.  The court also noted that the children's GAL recommended that the court grant the agency permanent custody of the children.

{¶23} The court additionally determined that the parents are unable or unwilling to provide the children with a legally secure permanent placement.  The court stated that appellant does not have a home and found that the mother lives with a convicted felon and registered sex offender.

{¶24} The court recognized that the mother asserted that she could not afford a home that would be large enough for all four children.  The court found, however, that the mother could afford to leave the home of the registered sex offender but had not done so.  The court stated that her actions thus reveal "her true intentions in this action." The court further noted that the mother testified that she knew that living with a registered sex offender was not appropriate if she wanted the children returned to her custody.

{¶25} The court thus concluded that placing the children in the agency's permanent custody is in their best interests and granted the agency permanent custody of the children.  This appeal followed.

ASSIGNMENT OF ERROR

THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY TO THE HIGHLAND COUNTY JOB AND FAMILY SERVICES CHILDREN'S DIVISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶26}**   In his sole assignment of error, appellant argues that the trial court's judgment placing the children in the agency's permanent custody is against the manifest weight of the evidence.  More particularly, appellant asserts that the trial court's finding that the mother is unable or unwilling to provide housing for the children is against the manifest weight of the evidence.  He contends that the mother tried to find adequate housing but claims that she could not qualify for a larger residence unless the four children were in her custody.[3]

**{¶27}** The agency counters that appellant overlooks the remaining facts that establish that the mother cannot provide the children with a legally secure permanent placement.  For instance, the agency asserts that, at the time of the permanent custody hearing, the mother lived with a convicted felon and registered sex offender.  The agency also contends that appellant's argument neglects to consider the remaining best interest factors and that those factors demonstrate that the trial court's judgment is not against the manifest weight of the evidence.

A.  Standard of Review

**{¶28}** Generally, a reviewing court will not disturb a trial court's permanent custody judgment unless the judgment is against the manifest weight of the evidence.

---

[3] We note that appellant asserts that he has standing to challenge the trial court's judgment to the extent that the court declined to extend the temporary custody order to allow the mother additional time to comply with the remaining case plan goals.  The agency does not challenge appellant's assertion.  Therefore, we do not address it.  We simply note that, in permanent custody cases, this court previously has allowed a parent to complain of an error committed against a nonappealing party when the error is prejudicial to the parent's rights.  *See In re C.M.*, 2017-Ohio-9037, ¶¶ 48-51 (4th Dist.)

*E.g., In re B.E.*, 2014-Ohio-3178, ¶ 27 (4th Dist.); *In re R.S.*, 2013-Ohio-5569, ¶ 29 (4th Dist.); *accord In re Z.C.*, 2023-Ohio-4703, ¶ 18.  When an appellate court reviews whether a trial court's permanent custody judgment is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).  We further observe, however, that issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact.  As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984):  "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."  *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997); *accord In re Christian*, 2004-Ohio-3146, ¶ 7 (4th Dist.).

{¶29} The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest-weight-of-the-evidence standard is

"whether the juvenile court's findings . . . were supported by clear and convincing evidence." *In re K.H.*, 2008-Ohio-4825, ¶ 43. "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04 (1986).

{¶30} In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").

{¶31} Thus, if a children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's judgment is not against the manifest weight of the evidence. *In re R.M.*, 2013-Ohio-3588, ¶ 62 (4th Dist.); *In re R.L.*, 2012-Ohio-6049, ¶ 17 (2d Dist.), quoting *In re A.U.*, 2008-Ohio-187, ¶ 9 (2d Dist.) ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements . . . have been established.'"). A reviewing court should

find a trial court's permanent custody judgment against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *see Black's Law Dictionary* (12th ed. 2024) (the phrase "manifest weight of the evidence" "denotes a deferential standard of review under which a verdict will be reversed or disregarded only if another outcome is obviously correct and the [judgment] is clearly unsupported by the evidence").

### B.  Permanent Custody Procedure

**{¶32}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.  R.C. 2151.414(A)(1).  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *In re C.F.*, 2007-Ohio-1104, ¶ 29, quoting R.C. 2151.01(A).

### C.  Permanent Custody Framework

**{¶33}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and any of the following circumstances apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

## 1. R.C. 2151.414(B)(1)(d)

In the case at bar, the trial court found, in accordance with R.C. 2151.414(B)(1)(d), that the children have been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. Appellant does not challenge this finding. Therefore, we do not address it.

## 2. Best Interest

{¶34} R.C. 2151.414(D) directs a trial court to consider "all relevant factors," as well as specific factors, to determine whether a child's best interest will be served by granting a children services agency permanent custody. The listed factors include: (1)

the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's GAL, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶35} Deciding whether a grant of permanent custody to a children services agency will promote a child's best interest involves a balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *C.F.*, 2007-Ohio-1104, at ¶ 57, citing *In re Schaefer*, 2006-Ohio-5513, ¶ 56. However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *Id.* Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 2017-Ohio-142, ¶ 24 (3d Dist.); *In re A.C.*, 2014-Ohio-4918, ¶ 46 (9th Dist.). In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 2016-Ohio-916, ¶ 66 (4th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324 (1991).

{¶36} In the case at bar, as we explain below, we believe that the record contains ample clear and convincing evidence to support the trial court's decision that placing the children in the agency's permanent custody is in their best interests. The record does not support a finding that the trial court committed a manifest miscarriage of justice.

Therefore, the trial court's best interest determination is not against the manifest weight of the evidence.

a. Children's Interactions and Interrelationships

{¶37} Appellant has not seen the children since February 2023, and the trial court found that he had abandoned the children. At the time of the agency's May 2024 permanent custody motion, appellant thus had not had any relationship with his children for more than one year.

{¶38} Furthermore, when the children were in appellant's care, on one occasion, S.J. had been found wandering around Greenfield. On another occasion, during the middle of the night, law enforcement officers discovered appellant, the mother, and the children in a car in a ditch. Officers had suspected that the parents were "sleeping off" heroin. Thus, appellant's interactions with the children when they were in his custody were not always positive.

{¶39} The mother interacted appropriately with the children when she visited the children, but she attended only about half of the visits available to her. Moreover, she allowed a period of more than 90 days to elapse without visiting the children. Additionally, the mother chose to live with a registered sex offender, even though she knew that doing so prevented the agency from attempting to reunify her with the children. The mother's failure to consistently visit the children and her choice to live with a registered sex offender suggest that she does not prioritize her relationship with the children.

{¶40} The evidence shows that H.J., S.J, and M.J. are doing well in their foster home. H.J. and S.J. are happy with the foster home and would like to remain living with

the foster family.  The foster parents intend to adopt the three children if the court grants

the agency permanent custody of the children.  This evidence indicates that the children

and the foster parents share positive interactions and interrelationships.

**{¶41}** N.J. is placed in a residential facility due to behavioral issues, but he

ultimately wishes to be placed with his siblings.

### b.  Children's Wishes

**{¶42}** The children's GAL testified that H.J. and S.J. wished to remain in the

foster home and that M.J. was too young to meaningfully express his wishes.  The

oldest child, N.J., would like to be placed with his siblings.  The GAL recommended that

the court place the children in the agency's permanent custody.  *C.F.*, 2007-Ohio-1104,

at ¶ 55 (R.C. 2151.414 "unambiguously gives the trial court the choice of considering

the child's wishes directly from the child or through the guardian ad litem"); *In re S.M.*,

2014-Ohio-2961, ¶ 32 (4th Dist.) (recognizing that R.C. 2151.414 permits juvenile courts

to consider a child's wishes as child directly expresses or through the GAL).

### c.  Custodial History

**{¶43}** The children have been in the agency's temporary custody since May

2022, and have remained in its temporary custody since that time.  When the agency

filed its May 2024 permanent custody motion, the children had been in its temporary

custody for about two years, far longer than 12 or more months of a consecutive 22-

month period.

### d.  Legally Secure Permanent Placement

**{¶44}** "Although the Ohio Revised Code does not define the term, 'legally secure

permanent placement,' this court and others have generally interpreted the phrase to

mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 2016-Ohio-793, ¶ 56 (4th Dist.), citing *In re Dyal*, 2001 WL 925423, *9 (4th Dist. Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 2015-Ohio-4682, ¶ 28 (10th Dist.) (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs); *In re J.H.*, 2013-Ohio-1293, ¶ 95 (11th Dist.) (stating that mother unable to provide legally secure permanent placement when she lacked physical and emotional stability and that father unable to do so when he lacked grasp of parenting concepts). Thus, "[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *M.B.* at ¶ 56.

{¶45} In the case before us, clear and convincing evidence supports the trial court's finding that the children need a legally secure permanent placement and that they can only achieve this type of placement by granting the agency permanent custody. At the time of the permanent custody hearing, appellant did not claim to have a legally secure permanent placement for the children. Instead, he asserted that the court should give the mother additional time to obtain independent housing. However, the evidence illustrates that the mother had nearly two years to show the agency that she could provide the children with a legally secure permanent placement, and she failed to do so. Instead, during the year before the permanent custody hearing, she chose to live with a registered sex offender, despite knowing that living with this

individual was a barrier to reunifying with her children, and she did not establish that she could maintain independent housing.

{¶46} While the mother claimed that she would be able to obtain independent housing within six months of the date of the permanent custody hearing, the court reasonably could have determined that her failure to do so during more than two years of agency involvement was a better predictor of her ability and willingness to obtain and maintain a stable home for the four children. Furthermore, the permanent custody statutes do not contemplate allowing children to languish in a children services agency's temporary custody once a parent has had two years to demonstrate that the parent could provide the children with a legally secure permanent placement and failed to do so. *See* R.C. 2151.415(D)(4). [4]

{¶47} Moreover, even if we agreed with appellant that the evidence does not support the trial court's finding that the mother was unable or unwilling to provide the children with a legally secure permanent placement, as we explained above, ample clear and convincing evidence otherwise supports the trial court's decision that placing the children in the agency's permanent custody is in their best interests.

e. R.C. 2151.414(E)(7) to (E)(11)

{¶48} Even though the trial court did not explicitly list the factors set forth in R.C. 2151.414(E)(7) to (11) in its decision, the record shows that the trial court considered

---

[4] R.C. 2151.415(D)(4) states as follows:

> No court shall grant an agency more than two extensions of temporary custody pursuant to division (D) of this section and the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section.

the factors, which is all that the statue requires, *see In re A.M.*, 2020-Ohio-5102, ¶ 31 and 33 ("Consideration is all the statute requires," and "R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors."). The trial court observed that it must consider the best interest factors listed in R.C. 2151.414(D)(1). Furthermore, the court found that appellant had abandoned the children by failing to visit them for more than one year and that the mother abandoned them by failing to visit them for more than 90 days.

**{¶49}** Based upon all of the foregoing, the trial court could have formed a firm belief that placing the children in the agency's permanent custody is in their best interests. Thus, its judgment is not against the manifest weight of the evidence.

**{¶50}** Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error.

CONCLUSION

**{¶51}** Having overruled appellant's sole assignment of error, we affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge




**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**