OPINION
{¶ 1} Appellant Randy Keckler ("Keckler") brings this appeal from the judgment of the Court of Common Pleas of Logan County, Juvenile Division, terminating his parental rights. For the reasons set forth below, the judgment is affirmed.
 {¶ 2} On December 31, 2004, Molly A. Keckler ("Molly") was born to Keckler and Sarah Allen ("Allen"). Molly resided with Allen and her half brother, Nathaniel. On May 17, 2006, the Logan County Children Services Board ("the Board") removed Molly and Nathaniel from Allen's home, alleging that they were dependent and neglected children. The trial court granted temporary custody to the Board on May 18, 2006, following an emergency custody hearing. On July 13, 2006, an adjudicatory hearing was held. The trial court entered its judgment finding Molly to be a dependent child by agreement of the parties on July 28, 2006. The dispositional hearing was held on August 14, 2006, with the entry continuing temporary custody with the Board filed on August 24, 2006. Additionally, the case plan filed on May 31, 2006, was approved and made into an order of the court. *Page 3 
 {¶ 3} Keckler was not included in this case plan, but was subsequently added to an amended case plan adopted by the trial court on September 5, 2006. This case plan required Keckler to 1) receive a drug assessment; 2) obtain employment or other means of financial support; 3) obtain stable and safe housing; 4) execute releases concerning his counseling; and 5) to be a law abiding citizen. On May 23, 2007, the Board was granted an extension of temporary custody. The Board then filed for permanent custody on October 17, 2007. A second extension of temporary custody was again granted on January 11, 2008. On February 14, 2008, the Board withdrew its motion for permanent custody as it applied to Keckler. The Board also filed a motion requesting that Keckler's mother be granted legal custody of Molly. This motion was filed to grant the Board additional time to determine whether placement with Molly's paternal grandmother would be suitable. Since the grandmother lived in North Carolina, the Board transported Molly there for two visits. During the February visit, Molly suffered a burn to her cheek from Keckler's cigarette. Additionally, the social worker observed open bottles of medication lying within reach of Molly despite prior warnings to remove them.
 {¶ 4} On March 28, 2008, the Board filed a new motion for permanent custody of Molly in relation to Keckler and withdrew its motion to grant legal custody to Keckler's mother. The hearing on the motions for permanent custody *Page 4 
were held on April 17 and 18, 2008. At the hearing, all of the parties agreed that Molly had been in the temporary custody for twelve or more months of a consecutive twenty-two month period. The trial court granted the Board's motions for permanent custody on May 2, 2008. Keckler appeals from this judgment and raises the following assignments of error.
 First Assignment of Error The court's decision to terminate [Keckler's] parental rights with his daughter Molly was against the manifest weight of the evidence.
 Second Assignment of Error The court erred by failing to grant [Keckler's] request for continuance when [the Board] supplemented its discovery with some thirty-eight pages of discovery on April 14, 2008, some three cays before the beginning of the hearing.
 {¶ 5} In the first assignment of error, Keckler claims that the trial court's judgment was against the manifest weight of the evidence. "When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court proceedings, the standard of review is the same as that in criminal cases." In re Kessinger, 3d Dist. No. 4-07-17, 4-07-18, 2008-Ohio-158, ¶ 15.
 Under a manifest-weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. * * * The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial *Page 5 ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'"
State v. Jackson, 169 Ohio App.3d 440, 2006-Ohio-6059, ¶ 14,863 N.E.2d 223 (citations omitted). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,687 N.E.2d 514. Although the appellate court may act as a thirteenth juror, it should still give due deference to the findings made by the fact-finder.
 The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.
State v. Thompson (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.
 {¶ 6} In order to terminate parental rights, the trial court must comply with R.C. 2151.414, which states in relevant part as follows.
 (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child the agency that filed the motion for permanent custody and that any of the following apply: *Page 6 
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 * * *
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 * * *
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public *Page 7 children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414. In this case, the trial court made the following conclusions of law.
 A. The Motions for Permanent Custody filed by [the Board] have been filed pursuant to [R.C. 2151.413(D)(1)]. Pursuant to [R.C. 2151.414(B)(1)(d)] it is in the best interest of the child to grant [the Board] permanent custody of the minor children and the minor children have been in the temporary custody of [the Board], a public children services agency, for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. For the purposes of this section, the children shall be considered to have entered the temporary custody of [the Board] on the earlier of the date the children were adjudicated (July 13, 2006) or the date that is sixty days after the removal of the minor children from their home (July 16, 2006).
May 2, 2008, Entry, 19. The trial court also concluded that Molly should not be placed with Keckler due to his failure to complete the case plan, provide support or arrange visits with Molly. Finally, the trial court concluded that termination of parental rights was in the best interest of Molly after considering the factors set forth in R.C. 2151.414(D).
 {¶ 7} Keckler makes two arguments. The first is that he complied with the caseplan and the second is that the trial court placed too much emphasis on the *Page 8 
sibling bond between Molly and Nathaniel. The first argument is related to the findings of the trial court that Molly could not or should not be placed with him within a reasonable period of time pursuant to R.C. 2151.414(B)(1)(a). Regardless of whether or not this finding is supported by the manifest weight of the evidence, the Board moved for custody pursuant to R.C. 2151.413(D)(1), i.e. that the children have been in the custody of the Board for twelve or more months out of twenty-two consecutive months. The trial court granted the termination of rights upon this basis. The evidence clearly supports that the children had been in the custody of the Board for approximately sixteen months when the initial motion for permanent custody was filed and for approximately twenty-one months before the March 2008, motion was filed. Thus, the trial court's judgment that the children had been in the temporary custody of the Board for more than twelve of the prior twenty-two months was not against the weight of the evidence.
 {¶ 8} Once this finding has been made, any finding under R.C. 2151.414(B)(1)(a) is unnecessary and, if against the manifest weight of the evidence, is harmless error. Once the trial court correctly made its finding under R.C. 2151.414(B)(1)(d), the trial court need only make a determination as to whether termination of parental rights is in the best interests of the children. R.C. 2151.414(B)(1) and (D). *Page 9 
 {¶ 9} The second issue raised by Keckler is that the trial court gave too much consideration to the sibling bond between Molly and Nathaniel. This issue arose during the determination of the best interests of Molly. As quoted above, the determination of the best interests of the child requires the trial court to consider a minimum of five factors. The sibling relationship is one of those factors. R.C. 2151.414(D)(1).
 {¶ 10} In this case, the trial court placed all of its conclusions of law relating to the factors in R.C. 2151.414(D) on the record.
 (1) * * * It is clear the minor children have developed a strong bond with their foster parents and siblings, who have provided love and protection for the minor children since May 17, 2006. The minor children have not had regular contact with their parents for several months, and such has not had an impact on the development of the minor children and progress. * * * Further, had it not been for the total efforts of [the Board], [Keckler] * * * would not have exercised parenting time. It is understood [Keckler] has had financial issues preventing him from being able to travel to and from the State of North Carolina. However, [Keckler] went for a period of at least two months after moving to the State of North Carolina without making any arrangements for parenting time. Bob Crook, Consolidated Care, Inc., testified as to the close relationship between the minor children and the foster parents, and elaborated on the close bond between the minor children. Based upon Mr. Cook's observations of the children, work and life experience, siblings should remain together, and Nathaniel and Molly should remain together.
 (2) * * * The Guardian Ad Litem Report was filed on February 25, 2008. Attorney Matthew Chamberlain has recommended the Motion for Permanent Custody be granted due to the fact it is in the best interest of the minor children to have a permanent and *Page 10 stable home. Further, the CASA Volunteer Court Report was filed on February 25, 2008. Janice Moore, CASA Volunteer, recommended the two children remain together in a safe permanent home with permanent custody being granted to [the Board]. Given the young age of the minor children, they cannot express their wishes. However, Nathaniel stated in the in camera interview that he wants to stay with Molly.
 (3) * * * The minor children were placed in the temporary custody of [the Board] on May 17, 2006. The minor children were placed with [the foster parents] on May 17, 2006, and the children have resided in their home since said date, a period of almost two years which constitutes a significant portion of their lives.
 (4) * * * Based upon the testimony of [the Board's] witnesses, including [the foster mother], and from review of the Guardian Ad Litem Report and CASA Volunteer Court Report, it is time for the minor children to have a legally secure placement, which can only be accomplished through a grant of permanent custody to [the Board]. Placement of [Molly] with [Keckler] would not be appropriate due to instability and potential lack of supervision. Although the Court cannot predict the future, it is anticipated [Keckler], at his age, will not want to reside with his parents upon receipt of his benefits, and may desire to acquire an apartment or residence of his own. This causes the Court grave concerns with respect to stability and supervision based upon [Keckler's] limitations and the age of the minor child. From the testimony, the only adult in the Keckler household possibly capable of providing full care and supervision of the minor child would be the Paternal Grandmother, Linda Keckler. However, Mrs. Keckler's age and medical history must cause concern. At this time, Mrs. Keckler has multiple other family members in which to provide care, and the addition of a minor child at Molly's age would be overwhelming. Further, although the Keckler family has stated they would allow Molly to continue to have contact with Nathaniel, there are no guarantees. Due to the expense of transportation and the household income described by Linda Keckler, it is highly unlikely the two minor children would ever by (sic) able to visit with each other on a *Page 11 regular basis. Although it was mentioned through several witnesses that there is no guarantee the children will remain together upon the Court granting [the Board] permanent custody, through Attorney Matthew Chamberlain's communications with the foster parents, the foster parents are certified for adoption and have made it clear they desire the children to remain members of their family. Based upon the Court's experience with the Agency, the Court is confident the Agency will do everything possible to ensure the minor children remain together.
Entry, supra at 21-22. The trial court did place weight on the relationship between the children. However, the trial court also placed weight on Keckler's rights as Molly's father. With respect to the best interest provisions, there are competing interests. The minor children * * * have bonded. This is not in dispute, but may be by virtue of the age of the minor children. As they get older, each will develop their own interests and the bond will change. Parents have paramount right to custody of their minor children. The agency needs to overcome a high hurdle that would allow the Court to maintain the children together. Obviously [Keckler] must have been suitable for consideration of placement of the minor child in North Carolina, and now his financial situation has improved, although the Court notes [the Board] had planned on placing Molly with Grandma Linda, not with her father. [Keckler] plans on staying at the home of his parents.
Id. at 7. In addition to the sibling bond, the trial court also considered the bond between Keckler and Molly, the bond between the foster parents and Molly, the recommendations of the CASA volunteer, the recommendations of the GAL, and Molly's need for stability and a legally secure placement. Based upon all of these considerations, the trial court determined that granting permanent custody of *Page 12 
Molly to the Board was in Molly's best interests. A review of the record indicates that the evidence supports the trial court's findings. As the determination of the facts, the trial court was in a better position to determine credibility and was able to observe the interplay between the witnesses. Although this court, like the trial court, has no doubt that Keckler cares for his daughter, the evidence supports the trial court's findings. The trial court's judgment was not against the manifest weight of the evidence. The first assignment of error is overruled.
 {¶ 11} The second assignment of error raises the issue of whether the trial court erred in denying Keckler's motion for a continuance after the Board provided additional discovery to Keckler three days before trial. "A decision by the trial court to deny a motion for continuance is within the sound discretion of the trial court and should not be reversed absent a showing of abuse of that discretion." In reMiller, 3d Dist. No. 2-04-02, 2004-Ohio-3023, ¶ 7. In evaluating the trial court's decision an appellate court should only reverse that decision if it determines that the decision was "not justified by, and clearly against, reason and the evidence; * * * such action must plainly appear to effect an injustice to the appellant." Henson v. HighlandDist. Hosp. (2001), 143 Ohio App.3d 699, 704, 758 N.E.2d 1166.
 {¶ 12} Here, the Board provided Keckler with a supplement to discovery three days before trial. The supplement consisted of four pages of case workers' *Page 13 
home visit reports from the trips to North Carolina, seven pages of pictures of Keckler's mother's home, and twenty-nine pages of activity log reports which averaged six to eight lines of text per page. The reports contained the narration of the accidental cigarette burn to Molly's face and the caseworker's concern about the medications left on the table. The trial court gave consideration to the lateness of the reports, but weighed that against the fact that the children had been in the temporary custody of the Board since 2006, and the need to complete the matter by May 17, 2008. The trial court then chose to proceed with the hearing. However, the trial court did agree to make some concessions to allow Keckler to present his case given the short time, including allowing his mother to testify by phone from North Carolina. Given the limited amount of information actually in the supplemental discovery and the concessions the trial court made, the trial court did not abuse its discretion in denying the motion for a continuance. The second assignment of error is overruled.
 {¶ 13} The judgment of the Court of Common Pleas of Logan County, Juvenile Division, is affirmed.
Judgment Affirmed.
 PRESTON and ROGERS, JJ., concur. *Page 1