[Cite as *In re S.M.*, 2014-Ohio-2961.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| S.M. | : | Case No. 14CA4 |
| | : | |
| ADJUDICATED DEPENDENT | : | |
| CHILD. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| | | RELEASED: 06/18/2014 |

_____

APPEARANCES:

Kathryn Hapner, Hapner & Hapner, Hillsboro, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.

_____

Harsha, J.

{¶1}    A.G. appeals the trial court's decision that awarded Highland County Children Services (HCCS) permanent custody of her now six-year-old son, S.M. A.G. asserts that clear and convincing evidence does not support the court's finding that it was in the child's best interest to award permanent custody to HCCS.

{¶2}    Initially she argues that the evidence does not support the court's finding that the child could not or should not be returned to her within a reasonable time. Because the trial court determined that the child had been in HCCS's temporary custody for twelve or more months of a consecutive twenty-two month period, it did not need to also find that the child could not or should not be returned to her within a reasonable time. Thus, any reference in the court's judgment to that requirement would be mere surplusage and, any error would be harmless. Therefore, we reject this assignment of error as being moot.

{¶3}    A.G. next argues that the trial court failed to analyze the best interest factors, which she contends are contained in R.C. 2151.414(E).  However, R.C. 2151.414(D)(1)(a) through (e)—not R.C. 2151.414(E)—outline the best interest factors.  R.C. 2151.414(E) lists the factors that a trial court must consider when determining whether a child cannot or should not be returned to a parent within a reasonable time.  Although R.C. 2151.414(D)(1)(e) states that R.C. 2151.414(E)(7) through (11) are relevant to a best interest analysis, A.G. does not raise any issue concerning those specific factors.  Because R.C. 2151.414(E) does not list the best interest factors that a trial court must consider, A.G.'s argument that the trial court erred by failing to analyze R.C. 2151.414(E) before awarding HCCS permanent custody is meritless.

{¶4}    A.G. also asserts that the trial court's failure to determine the child's wishes constitutes reversible error.  We agree that the court's failure to investigate the child's wishes was erroneous, but we do not agree that it constitutes plain error in this case.  We cannot conclude the omission was outcome determinative; nor do we believe it seriously affected the basic fairness, integrity, or public reputation of the judicial process.  Had the child expressed a desire to return to her mother, the remaining best interest factors still support a decision to award HCCS permanent custody.

{¶5}    Accordingly, we overrule A.G.'s assignments of error and affirm the trial court's judgment.

## I.  FACTS

{¶6}    On June 21, 2012, HCCS received a report that A.G. had been arrested on theft charges and learned that she and her four-year-old child had been living in a car for over a week.  A.G. signed a voluntary agreement for care and agreed to place

the child in HCCS's custody for thirty days. Before the thirty days expired, HCCS filed a complaint alleging the child to be a dependent child and requesting temporary custody of the child. After A.G. admitted S.M. was dependent, the court adjudicated him a dependent child on September 5, 2012, and placed him in HCCS's temporary custody.

{¶7} HCCS subsequently developed a case plan that required A.G. to complete a mental health assessment and follow treatment recommendations, take medication as prescribed, maintain stable housing for at least six months, and comply with her non-reporting probation. A.G. later started living with her boyfriend, J.J., and HCCS added him to the case plan. The case plan required J.J. to complete a substance abuse assessment, follow recommended treatment, obtain stable income, and comply with probation.

{¶8} A July 2013 case plan review noted that A.G. recently obtained housing after a lengthy period of homelessness, but the home was in disrepair and not suitable for the child. Moreover, A.G. did not have a job or stable income and did not have the ability to provide for the child's basic needs. J.J. also did not have a job or stable income.

{¶9} On December 11, 2013, HCCS filed a motion to modify the disposition to permanent custody. HCCS asserted that the child had been in its temporary custody for at least twelve of the past twenty-two months under R.C. 2151.414(B)(1)(d), and that granting it permanent custody of the child would be in the child's best interest. HCCS alleged that A.G. had not complied with her case plan so as to be reunified with her child and asserted: (1) A.G. started mental health counseling but never completed it, (2) A.G. does not have safe and stable housing, (3) A.G. is not employed and does not

have a source of income, and (4) although J.J. is employed, he failed to complete a substance abuse program.

{¶10}  The guardian *ad litem* filed a report.  The guardian *ad litem* observed that the child's foster home is a safe and stable environment and that the child appears bonded with the foster family.  The guardian *ad litem* also noted that he had not interviewed the child to ascertain the child's wishes, but he recommended that the court award HCCS permanent custody of the child.

{¶11}  The court held the permanent custody hearing and upon the agency's motion added a request under R.C. 2151.414 (B)(1)(a), which addresses whether the child cannot or should not be placed with the parent within a reasonable period of time.

{¶12}  HCCS caseworker Tonya Farley testified that HCCS developed a case plan in order to alleviate the concerns regarding the child's care and to reunify the child with A.G.  She explained that the case plan required A.G. to (1) address her mental health issues by completing an assessment and following treatment recommendations, (2) maintain stable housing and employment for at least six months, and (3) comply with the terms of her non-reporting probation.  Farley testified that although A.G. completed a mental health assessment, she did not attend all of her subsequent appointments, and thus, the provider terminated her from the program.  Farley stated that A.G. has an appointment scheduled later in February 2014, and that A.G. made the appointment shortly before the permanent custody hearing.  Farley stated that throughout the time she worked with A.G., A.G. "has moved around quite a bit."  Farley testified that A.G.'s current residence is "appropriate," but that A.G. has not maintained any home for at least six months.  Farley also testified that A.G. planned to obtain Social Security

disability benefits as a source of income.  A.G. informed Farley that she had obtained employment, but Farley stated that A.G. never actually worked.  Farley stated that the child has lived with the same foster family since his removal in 2012 and that the child is bonded with the family.  Farley further testified that A.G. and the child "are very bonded" and that A.G. positively interacts with the child.  Farley explained that A.G. is "patient with him," "responds to his needs appropriately," and "insures a safe[] environment."

{¶13}  Highland County Family Advocacy Center Visitation Monitor Deloris Colville stated that eighty-three visits were made available to A.G., but she attended only fifty-four.  Colville explained that A.G. failed to confirm eleven visits and canceled twelve.  The foster parent canceled two due to illness, and three were canceled due to inclement weather.  Colville stated that the child is "very bonded" to A.G. and calls her "mom."

{¶14}  The child's foster mother stated that the child has resided in her home since June 21, 2012.  She explained that when the child first entered her home, he did not speak well and did not know how to use a pencil, a crayon, or scissors.  The foster mother stated that she enrolled the child in speech and occupational therapy to address these concerns, and the child has improved "[a] hundred percent."  She testified that the child calls her "mom" and her husband "dad."  The foster mother stated that she is bonded to the child, and the child is bonded to the family.  She further explained that the child visits A.G. and does not appear upset or unhappy before or after the visits, but instead, the child appears to have "fun" during the visits.  She testified that she and her husband are willing to adopt the child if the court awards HCCS permanent custody.

{¶15} A.G. testified that she has lived in the same apartment since December 2013, along with J.J. and J.J.'s mother. She stated that she had an appointment with a mental health counselor earlier in February 2014 and that she has another appointment scheduled for February 25, 2014. A.G. explained that she had sought other mental health counseling during the time the child has been in HCCS's temporary custody, but she missed several appointments due to transportation difficulties. A.G. explained that she was unable to attend eleven of her eighty-three visits because she had been at the Clinton County Homeless Center and could not find transportation to the visits. She stated that even if she missed a visit, she still talked to the child on the phone. A.G. admitted that she has not been employed but explained she tried to obtain Social Security benefits. A.G. stated that once her Social Security application was denied, she obtained employment but was placed on administrative leave after suffering an injury while pregnant. She explained that she is currently looking for a job. A.G. testified that J.J. works and makes enough money to pay rent, buy groceries, and pay the utility bills. A.G. testified that she would like the court to deny HCCS permanent custody in order to permit her time to keep working on her case plan.

{¶16} J.J.'s mother testified she lives in a one-bedroom apartment with A.G. and her son. She admitted that she had been convicted of possession of methamphetamine.

{¶17} The trial court awarded HCCS permanent custody of the child. The court found that HCCS received temporary custody of the child on August, 1, 2012, and that the child has remained in HCCS's custody since that time. The court thus determined that the child has been in HCCS's temporary custody for twelve or more months of a

consecutive twenty-two month period and that R.C. 2151.414(B)(1)(d) therefore applied.

In analyzing the best interest factors, the court observed:

> "[The child] has been residing in the same foster home since June 21, 2012. According to his foster mother he is very bonded with each member of his foster family and interacts extremely well with each member. If afforded the opportunity the foster parents will adopt [the child].
> The evidence also established [the child] is still bonded with his mother and interacted well with her during visits * * *. However the Court notes the mother has been given the opportunity to visit [the child] 83 times * * * but made the effort to visit only 54 times or 65% of available time. The Court is of the opinion only 5 of the 29 missed visits were not the fault of the mother and therefore she elected not to visit [the child] 24 times without a justifiable excuse.
> The Court was not asked to interview [the child] and the Guardian *Ad Litem* elected not to interview the child. Therefore the wishes of [the child] are unknown to the Court.
> * * * *
> The Court is of the opinion [the child] is in need of a legally secure permanent placement which currently cannot be achieved without granting the Agency permanent custody."

{¶18} The court additionally considered A.G.'s case plan compliance and explained:

> "The Court considers the mental health component of the case plan to be a significant requirement for reunification. The mother started but elected not to comply with her mental health counselling [sic] on several occasions. It is disingenuous for the mother to have this Court believe she is now willing to complete that component of her case plan when she has had since September of 2012 to do so.
> The same analysis applies to obtaining stable housing. The mother has resided in multiple locations, including the Clinton County Homeless Shelter, since this action was initiated[,] electing to reside in each for a few months. The Court notes the mother was living in a car when the complaint was filed in this action. She has lived at her current residence, a one bedroom apartment, with her boyfriend, another infant child and the mother of her boyfriend who has been convicted for possession of methamphetamine for less than two months. This Court does not extol the decisions of the mother in her choice of residences or those she has permitted to reside with her. Clearly she has chosen not to obtain a safe, stable or healthy environment in which for [the child] to reside. The Court disagrees with the Agency worker who testified the home is 'appropriate.'
> When conflating the evidence it is clear to this Court the mother has elected not to take the steps required to have [the child] returned to her care and

custody and that she has been afforded more than adequate opportunity to do so. Her decisions for the past twenty months are not ones indicative of a mother who is willing to make the sacrifices necessary to have her son returned to her custody and provide him a safe and nurturing environment.

The Court finds by clear and convincing evidence it is in the best interest of [the child] to grant permanent custody to the Agency. The mother has done far too little far too late to convince this Court the case should be extended. The Court also notes the Guardian *Ad Litem* in his timely filed report recommended the motion be granted. [The child] has not resided with his mother for twenty months and it is time to provide him a permanent and stable home environment in which to thrive."

## II. ASSIGNMENT OF ERROR

{¶19} A.G. raises two assignments of error:

First Assignment of Error: "The trial court erred in finding by clear and convincing evidence that it was in the best interest of S.M. to grant permanent custody to the agency pursuant to [R.C.] 2151.414(D)."

Second Assignment of Error: "The trial court erred by not determining the wishes of the child as required by [R.C.] 2151.414(D)(2)."

## III. ANALYSIS

{¶20} A.G.'s first and second assignments of error challenge the trial court's decision to award HCCS permanent custody of the child. Because the same general principles apply to both, we consider them together.

{¶21} In her first assignment of error, A.G. asserts that the trial court's finding that the child cannot or should not be returned to her care is unsupported by clear and convincing evidence. A.G. contends that she has substantially remedied the conditions that led to the child's initial removal from her home. A.G. further argues that the trial court failed to analyze the best interest factors, which she contends are contained in R.C. 2151.414(E).

{¶22} In her second assignment of error, A.G. argues that the trial court erred by failing to consider the child's wishes.

A.  STANDARD OF REVIEW

**{¶23}**  "A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence." *In re R.S.,* 4th Dist. Highland No. 13CA22, 2013–Ohio–5569, ¶29; *accord In re J.V.-M.P.,* 4th Dist. Washington No. 13CA37, 2014–Ohio–486, ¶11.  To determine whether a permanent custody order is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.  *R.S.* at ¶30, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶20.  In reviewing the evidence under this standard, we must defer to the trial court's credibility determinations because of the presumption in favor of the finder of fact.  *In re R.S.* at ¶33, citing *Eastley* at ¶21.  Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."  *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); a*ccord In re Christian,* 4th Dist. No. 04CA 10, 2004–Ohio–3146, 2004 WL 1367399, ¶7.  As the Ohio Supreme Court long-ago explained:

> "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record."

*Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case, a trial court judge may have significant contact with the parties before a permanent custody motion is even filed. *In re R.S.* at ¶34.  In such a situation, it is not unreasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, *etc.,* of the parties than this court ever could from a mere reading of the permanent custody hearing transcript.  *Id.*

**{¶24}** In a permanent custody case, the dispositive issue on appeal is "whether the juvenile court's findings * * * were supported by clear and convincing evidence."  *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶43; *accord* R.C. 2151.414(B)(1).  "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford,* 161 Ohio St.469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013–Ohio–3720, 995 N.E.2d 1175, ¶14.  "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence."  *In re R.M.,* 2013–Ohio–3588, 997 N.E.2d 169, ¶55 (4th Dist).

B.  PERMANENT CUSTODY PRINCIPLES

**{¶25}** A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed .2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. *D.A.* at ¶11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974). Thus, the state may terminate parental rights when a child's best interest demands such termination. *D.A .* at ¶11.

## C.  PERMANENT CUSTODY FRAMEWORK

**{¶26}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶27}** Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.

**{¶28}** In the case at bar, A.G. does not challenge the trial court's R.C. 2151.414(B)(1)(d) finding that the child had been in the custody of the agency for the requisite twelve-month period. Thus, we do not address it and it remains in effect. Although A.G. challenges the trial court's finding under R.C. 2151.414(B)(1)(a), that finding was unnecessary in light of the court's determination that R.C. 2151.414(B)(1)(d) applied. *E.g., In re J.V-M.P.* at ¶22; *In re H.D.*, 10th Dist. Franklin No. 13AP-707, 2014-Ohio-228, ¶15 (declining to consider argument relating to R.C. 2151.414(B)(1)(a) when R.C. 2151.414(B)(1)(d) clearly applied); *In re A.B.*, 8th Dist. Cuyahoga No. 99836, 2013-Ohio-3818, ¶8 ("Because R.C. 2151.414(B)(1)(d) was plainly satisfied, R.C. 2151.414(B)(1)(a) was inapplicable and the trial court's findings under that provision were unnecessary."); *In re Keckler*, 3rd Dist. Logan No. 8-08-08, 2008-Ohio-4642, ¶8 (stating that once a trial court finds that R.C. 2151.414(B)(1)(d) applies, "any finding under R.C.2151.414(B)(1)(a) is unnecessary and, if against the manifest weight of the evidence, is harmless error"). *See R.S.* at ¶34 (recognizing that when trial court found R.C. 2151.414(B)(1)(d) applied, any error associated with its R.C. 21515.414(B)(1)(b) abandonment finding would not constitute reversible error). R.C. 2151.414(B) requires a trial court to find the existence of only one of the R.C. 2151.414(B) factors. *Id.* Thus, any error that may exist concerning the court's R.C. 2151.414(B)(1)(a) finding could not constitute reversible error. *Id.*; *In re Keckler* at ¶8. Consequently, we do not consider

A.G.'s argument that the trial court's R.C. 2151.414(B)(1)(a) finding is against the manifest weight of the evidence because it is moot.

### D.  R.C. 2151.414(E)

**{¶29}**  A.G. asserts that R.C. 2151.414(E) "provides a best interest test that the court must analyze and [that] must be met before permanently placing a child in the custody of the Agency.  It is not necessary for a court to individually list all 16 factors outlined in [R.C.] 2151.414(E) * * *."  A.G. then contends that clear and convincing evidence does not support the court's findings under R.C. 2151.414(E)(1) and (2).  A.G.'s argument is misdirected.  R.C. 2151.414(E) does not set forth the best interest factors that a trial court must consider before awarding a children services agency permanent custody.  Instead, that statute sets forth the factors that a trial court should consider when determining if a child cannot or should not be returned to a parent within a reasonable time.  R.C. 2151.414(E) reads:

> "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent * * * *[.]"

The statute then outlines sixteen factors for a trial court to consider.  Because the factors A.G. cites do not relate to the best interest analysis, her argument that the factors do not support the trial court's best interest finding is meritless.  Furthermore, to the extent A.G. asserts that the trial court improperly relied upon them when determining that the child cannot or should not be returned to her within a reasonable time under R.C. 2151.414(B)(1)(a), we concluded that the court's finding was

unnecessary in light of its finding that R.C. 2151.414(B)(1)(d) applied.  Therefore, its findings under R.C. 2151.414(E)(1) and (2) were likewise unnecessary, and any error would constitute harmless error.

## E.  BEST INTEREST

**{¶30}**  A.G. next argues that the trial court committed reversible error as a matter of law by failing to consider the child's wishes when it evaluated the child's best interest.

**{¶31}**  "In a best-interests analysis under R.C. 2151.414(D), a court must consider 'all relevant factors,' including five enumerated statutory factors * * *.  No one element is given greater weight or heightened significance."  *In re C.F.*, 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer,* 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶56.  The five enumerated factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

**{¶32}**  Our focus here is on the child's wishes "as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity."  R.C. 2151.414(D)(1)(b).  This statute "unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian *ad litem*."  *In re C.F.* at ¶55.  Thus, "[t]he trial court has discretion to accept the testimony of the

guardian *ad litem* on the child's wishes rather than hearing a direct expression of those wishes made by the child." *Id.* at ¶56. A trial court ordinarily errs if it completely fails to address a child's wishes. *In re T.V.*, 10th Dist. Franklin Nos., 04AP-1159 and 04AP-1160, 2005-Ohio-4280; *In re Ridenour,* 11th Dist. Lake Nos. 2003–L–146, 2003-L-147, 2003-L-148, 2004–Ohio–1958; *In re Swisher,* 10th Dist. Franklin Nos. 02AP–1408 and 02AP–1409, 2003–Ohio–5446; *In re Williams*, 10th Dist. Franklin No. 00AP–973 (Mar. 20, 2001).

**{¶33}** Despite her assertion that the trial court's failure to consider the child's wishes constitutes reversible error, A.G. never objected to the guardian *ad litem*'s failure to interview the child; she never questioned the guardian *ad litem* regarding the child's wishes; she never requested the trial court to conduct an *in camera* interview of the child; and she never objected to the trial court's failure to do. Thus, appellant failed to preserve this issue for appellate review. *See In re M.C.*, 9th Dist. Summit No. 24797, 2009-Ohio-5544, ¶36 (determining that parent's argument trial court erred by failing to consider child's direct wishes lacked merit when parent "did not request that his child testify at the hearing, nor did he ask the trial judge to conduct an *in camera* interview of the child"). *See, generally, State v. Clinkscale,* 122 Ohio St.3d 351, 2009–Ohio–2746, 911 N.E.2d 862, ¶31 (stating that a party must timely object to preserve error for appeal); *Stores Realty Co. v. City of Cleveland, Bd. of Bldg. Standards and Bldg. Appeals,* 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975) ( "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal ."). Thus, our review is limited to a plain error analysis.

**{¶34}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Godlfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. Moreover, plain error does not exist unless the court's obvious deviation from a legal rule affected the outcome of the proceeding. *E.g., State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶35}** In this case, the court obviously deviated from a legal rule, *i.e.*, it failed to consider the child's wishes—one of the express factors outlined in R.C. 2151.414(D)(1)(b). However, we cannot conclude that the court's obvious deviation from R.C. 2151.414(D)(1)(b) affected the outcome of the proceeding or that its error seriously affected the basic fairness, integrity, or public reputation of the judicial process. But see, *In re H.M.*, 3rd Dist. Logan Nos. 8-13-11, 8-13-12, 8-13-13, --- Ohio App.3d ---, 2014-Ohio-755, ---N.E.3d ---, ¶39 (reversing trial court's decision granting permanent custody when evidence failed to show that the trial court or guardian *ad litem* investigated children's wishes and explaining "[w]ithout any evidence on the record that the trial court or GAL investigated those wishes, under the facts of this case, we cannot find that the trial court adequately considered the wishes of the children as statutorily required"). Obviously, "[t]he trial court and/or the guardian *ad litem* would normally be well advised to * * * specifically address the [direct] wishes of the children" when practical. *In re Lane,* 3rd Dist. Marion Nos. 9–03–61, 9–03–62, 2004–Ohio–2798, ¶46. We realize it may not be practical to do so when the child is too young to have or

express a meaningful opinion.  When that is the case, the court need merely indicate that in its findings.  *See, In re H.M., supra* and *In re J.W.*, 10th Dist. Franklin Nos. 06AP-864, 06AP-1062, 06AP-875, 2007-Ohio-1419, ¶ 18.

**{¶36}**  But here we deal with plain error.  Thus, even if the child had directly expressed a wish to live with A.G., this one factor alone would not require the trial court to deny HCCS permanent custody.  Instead, the child's wishes are but a factor for the trial court to weigh along with others outlined in R.C. 2151.414(D)(1).  *In re C.F* at ¶ 57*.* The child's wishes are not of heightened importance.  *Id.*  We do not believe that the court's failure to consider this one factor constitutes plain error when other relevant factors support its decision to award HCCS permanent custody.

**{¶37}**  Regarding the child's interactions and interrelationships, the evidence shows that the child is bonded with the foster family.  The child also is bonded with A.G. However, A.G.'s past conduct shows that she did not fully commit to being reunited with her child.  Instead, she made half-hearted attempts to comply with the case plan and only at the eleventh hour sought to again comply with the case plan.  Furthermore, A.G. failed to exercise all of her opportunities to visit with the child, thus demonstrating that she lacked an absolute commitment to her child.  A.G. may share a loving relationship with her child, but she has failed to take full advantage of continuing to maintain that relationship.  With respect to the child's custodial history, the evidence shows that the child has been in HCCS's temporary custody for well-over twelve months.  Additionally, the child has been out of A.G.'s care since June 21, 2012, and has lived in the same foster home since that time.  The evidence also supports the court's finding that the child could not achieve a legally secure permanent placement without granting HCCS

permanent custody.  A.G. had over twelve months to secure safe, stable housing and a reliable source of income yet failed to do so.  She only obtained an apartment two months before the permanent custody hearing, and the trial court determined that it was unsuitable for the child because J.J.'s mother, who had been convicted of possession of methamphetamine, lives there.  The trial court thus had more than sufficient clear and convincing evidence that A.G. could not provide the child with a legally secure permanent placement.  Additionally, the court considered the guardian *ad litem*'s recommendation that the court grant HCCS permanent custody.  Based upon the foregoing evidence, the trial court could have formed a firm belief that granting HCCS permanent custody was in the child's best interest.  Consequently, its failure to consider the child's wishes did not affect the outcome of the proceedings.

**{¶38}**  As a final point, we admonish trial courts to carefully apply each factor outlined in R.C. 2151.414(D)(1) .  The statute mandates trial courts to consider the enumerated factors.  Thus, a trial court obviously errs when it fails to consider all of the statutory factors.  Additionally, although we have found no plain error in this case, that is not to state that plain error may never exist when a trial court fails to consider one of the enumerated factors.  Situations may arise when a court's failure to consider even one of the enumerated factors affects the outcome or undermines the integrity of the proceedings.  Thus, trial courts would be well-advised to consider all of the enumerated factors.  When plain error exists due to a court's failure to consider an enumerated factor, a reversal only prolongs a child's uncertainty.

**{¶39}**  Accordingly, we overrule A.G.'s two assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court



BY: _____

William H. Harsha, Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**