[Cite as *In re L.G.*, 2025-Ohio-2855.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

In re L.G. (DOB: 05/05/2023)     :

     :     Case No. 25CA3

Adjudicated Dependent Child.     :

     :

     :     <u>DECISION AND JUDGMENT</u>
     :     <u>ENTRY</u>

     :

     :     **RELEASED: 08/05/2025**

_____

<u>APPEARANCES:</u>

Christopher Bazeley, Cincinnati, Ohio, for appellant.

Brittany E. Leach, Athens County Assistant Prosecutor, Athens, Ohio, for appellee.

_____

Wilkin, J.

{¶1} Appellant, the child's father, appeals a judgment of the Athens County Court of Common Pleas, Juvenile Division, that granted Athens County Children Services ("the agency"), permanent custody of his one-year-old child, L.G.

{¶2} Appellant raises one assignment of error that asserts that the trial court's judgment placing the child in the agency's permanent custody is against the manifest weight of the evidence. After our review of the record and the applicable law, we do not find any merit to appellant's assignment of error. Therefore, we affirm the trial court's judgment.

FACTS AND PROCEDURAL BACKGROUND

{¶3} On May 8, 2023, the trial court entered an ex parte order that placed the child in the agency's emergency custody. The next day, the agency filed a complaint that alleged the child was a dependent child and a motion for emergency custody of the child. The complaint contained the following allegations. On April 12, 2023, the child's

mother was admitted to the hospital due to a high-risk pregnancy. She subsequently tested positive for amphetamines and fentanyl. She remained hospitalized until May 5, 2023, the date of the child's birth. The mother did not have a plan to remain sober after being discharged from the hospital, and the child's putative father, appellant, did not have a home. Additionally, appellant and the child's mother had their parental rights terminated with respect to another child.

{¶4} At a shelter care hearing, the court continued the child in the agency's temporary custody pending further proceedings. The trial court later adjudicated the child a dependent child and placed the child in the agency's temporary custody.

{¶5} On January 17, 2024, the agency filed a motion to modify the disposition to permanent custody. The agency asserted that the parents had abandoned the child. The agency alleged that the mother had absolutely no involvement with the agency. The agency further claimed that appellant had not established paternity and had not visited, supported, or communicated with the child.

{¶6} On July 9, 2024, the trial court held a hearing to consider the agency's motion. At the hearing, caseworker Maya Zoulek testified that appellant currently resides at an inpatient treatment center where he receives treatment for substance use disorder. Zoulek stated that, in November 2023, appellant contacted her and had sporadic contact in the subsequent months. Zoulek indicated that appellant has never met the child and that he only recently scheduled visits with the child. She reported that appellant's visits were scheduled to occur the week of the permanent custody hearing.

{¶7} Zoulek further attested that the child "is clearly bonded with his foster mother" and that the foster mother is interested in adopting the child.

{¶8} The child's guardian ad litem ("GAL") testified and likewise reported that the child "is very clearly bonded with his foster mother." The GAL recommended that the court place the child in the agency's permanent custody.

{¶9} Appellant testified as follows. He currently resides in a treatment facility with an expected discharge date of September 11, 2024. Upon his release, he plans to enroll in an outpatient treatment program and to live with his mother until he obtains independent housing. He also has a job waiting for him. Appellant informed the court that he is willing to do whatever he needs to do to be able to raise his child.

{¶10} On February 3, 2025, the trial court granted the agency permanent custody of the child. The court found that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent and that placing the child in the agency's permanent custody is in the child's best interest. To support its finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the trial court cited R.C. 2151.414(E)(10) and (11). The court determined that R.C. 2151.414(E)(10) applies to the mother because she had "completely abandoned" the child. The court found that R.C. 2151.414(E)(11) applied to both parents and explained that "they have had their parental rights involuntarily terminated and neither parent has provided clear and convincing evidence to prove that the parents can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child."

{¶11} With respect to the child's best interest, the court first considered the child's interactions and interrelationships with the foster mother, the child's mother, and appellant. The court observed that the child had been living in the same foster home

since a few days after his birth. The court stated that the child is "very bonded and attached to his foster caregiver" and that the foster parent provides the child with his daily needs and support. The court found that the child's mother, on the other hand, had "zero interaction" with the child and "effectively abandoned" the child. The court noted that appellant did not ask to visit the child until after the agency had filed its permanent custody motion.

{¶12} The court next considered the child's wishes and found that the child is too young to express his wishes. The court observed that the child's GAL recommended that the court place the child in the agency's permanent custody.

{¶13} With respect to the child's custodial history, the court noted that the child has been in the agency's temporary custody since he was three days old, but he has not been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.

{¶14} The court additionally determined that the child needs a legally secure permanent placement and that he cannot achieve that type of placement without granting the agency permanent custody. The court again observed that the child's mother has had "zero interaction" with the child and that she thus has not established any ability to provide the child with a legally secure permanent placement.

{¶15} The court also found that appellant cannot provide the child with a legally secure permanent placement. The court noted that at the time of the permanent custody hearing, appellant still was in a residential treatment program. The court commended appellant for addressing his substance use issues but faulted him for failing to interact with the agency. The court stated that his "history and lack of

interaction in this case until after the agency filed for permanent custody [was] concerning." The court additionally observed that appellant had his parental rights terminated with respect to other children. The court further questioned whether appellant would be able to remain sober, find stable income, obtain appropriate housing, and remain a law-abiding citizen.

{¶16} The court thus concluded that placing the child in the agency's permanent custody is in his best interest and granted the agency permanent custody of the child. This appeal followed.

ASSIGNMENT OF ERROR

THE TRIAL COURT'S DECISION AWARDING PERMANENT CUSTODY OF L.G. TO THE STATE IS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

{¶17} In his sole assignment of error, appellant argues that the trial court's judgment placing the child in the agency's permanent custody is against the manifest weight of the evidence. Appellant does not specifically challenge the trial court's finding that (1) the child's mother had abandoned the child and (2) the child could not be placed with him within a reasonable time. Instead, he contends that the weight of the evidence does not support the trial court's decision that placing the child in the agency's permanent custody is in the child's best interest. Appellant explains that he did not become involved with the agency sooner due to communication difficulties and the absence of DNA evidence that he was the child's father. Appellant asserts that he "was willing to do whatever was needed" to obtain custody of the child. He further states that the child could have lived with him and his mother until appellant obtained independent housing.

## A. Standard of Review

{¶18} Generally, a reviewing court will not disturb a trial court's permanent custody judgment unless the judgment is against the manifest weight of the evidence. *E.g., In re B.E.*, 2014-Ohio-3178, ¶ 27 (4th Dist.); *In re R.S.*, 2013-Ohio-5569, ¶ 29 (4th Dist.); *accord In re Z.C.*, 2023-Ohio-4703, ¶ 18. When an appellate court reviews whether a trial court's permanent custody judgment is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). We further observe, however, that issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997); *accord In re Christian*, 2004-Ohio-3146, ¶ 7 (4th Dist.).

**{¶19}** The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest-weight-of-the-evidence standard is "whether the juvenile court's findings . . . were supported by clear and convincing evidence." *In re K.H.*, 2008-Ohio-4825, ¶ 43. "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04 (1986).

**{¶20}** In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").

**{¶21}** Thus, if a children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's judgment is not against the manifest weight of the evidence. *In re R.M.*, 2013-Ohio-3588, ¶ 62 (4th Dist.); *In re R.L.*, 2012-Ohio-6049, ¶ 17 (2d Dist.), quoting *In re A.U.*, 2008-Ohio-187, ¶ 9 (2d Dist.) ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent,

credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements . . . have been established.'").  A reviewing court should find a trial court's permanent custody judgment against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *see Black's Law Dictionary* (12th ed. 2024) (the phrase "manifest weight of the evidence" "denotes a deferential standard of review under which a verdict will be reversed or disregarded only if another outcome is obviously correct and the [judgment] is clearly unsupported by the evidence").

## B.  Permanent Custody Procedure

**{¶22}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.  R.C. 2151.414(A)(1).  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'"  *In re C.F.*, 2007-Ohio-1104, ¶ 29, quoting R.C. 2151.01(A).

## C.  Permanent Custody Framework

**{¶23}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing

evidence, that the child's best interest would be served by the award of permanent custody and that, as relevant here,

> [t]he child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(B)(1)(a).

### 1. R.C. 2151.414(B)(1)(a)

{¶24} In the case at bar, the trial court found that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Appellant does not challenge this finding. Therefore, we do not address the issue.

### 2. Best Interest

{¶25} R.C. 2151.414(D) directs a trial court to consider "all relevant factors," as well as specific factors, to determine whether a child's best interest will be served by granting a children services agency permanent custody. The listed factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's GAL, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶26} Deciding whether a grant of permanent custody to a children services agency will promote a child's best interest involves a balancing of "all relevant [best

interest] factors," as well as the "five enumerated statutory factors." *C.F.*, 2007-Ohio-1104, at ¶ 57, citing *In re Schaefer*, 2006-Ohio-5513, ¶ 56. However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *Id.* Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 2017-Ohio-142, ¶ 24 (3d Dist.); *In re A.C.*, 2014-Ohio-4918, ¶ 46 (9th Dist.). In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 2016-Ohio-916, ¶ 66 (4th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324 (1991).

{¶27} In the case at bar, as we explain below, we believe that the record contains ample, clear and convincing evidence to support the trial court's decision that placing the child in the agency's permanent custody is in his best interest. The record does not support a finding that the trial court committed a manifest miscarriage of justice. Therefore, the trial court's best interest determination is not against the manifest weight of the evidence.

a.   Child's Interactions and Interrelationships

{¶28} Between the date of the child's birth, May 5, 2023, and the date of the permanent custody hearing, July 9, 2024, appellant had not visited the child. Thus, he had not established any relationship with the child.

{¶29} As the trial court found, the child's mother abandoned the child and had absolutely no interaction with the agency. The child thus does not have any relationship with his mother.

{¶30} On the other hand, the child has lived with the foster mother for the entirety of his young life and is bonded with her. The foster mother plans to adopt the child if the court grants the agency permanent custody of the child..

### b. Child's Wishes

{¶31} Although the child is too young to express his wishes, the GAL recommended that the court place the child in the agency's permanent custody. *C.F.*, 2007-Ohio-1104, at ¶ 55 (R.C. 2151.414 "unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian ad litem"); *In re S.M.*, 2014-Ohio-2961, ¶ 32 (4th Dist.) (recognizing that R.C. 2151.414 permits juvenile courts to consider a child's wishes as child directly expresses or through the GAL).

### c. Custodial History

{¶32} The child has been in the agency's temporary custody since May 2023, and has remained in its temporary custody since that time. When the agency filed its January 2024 permanent custody motion, the child had been in its temporary custody for about six months. At the time of the permanent custody hearing, the child had been in the agency's temporary custody for over one year.

### d. Legally Secure Permanent Placement

{¶33} "Although the Ohio Revised Code does not define the term, 'legally secure permanent placement,' this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 2016-Ohio-793, ¶ 56 (4th Dist.), citing *In re Dyal*, 2001 WL 925423, *9 (4th Dist. Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable,

safe, and nurturing environment"); *see also In re K.M.*, 2015-Ohio-4682, ¶ 28 (10th

Dist.) (observing that legally secure permanent placement requires more than a stable

home and income but also requires an environment that will provide for child's needs);

*In re J.H.*, 2013-Ohio-1293, ¶ 95  (11th Dist.) (stating that mother was unable to provide

legally secure permanent placement when she lacked physical and emotional stability

and that father was unable to do so when he lacked grasp of parenting concepts).

Thus, "[a] legally secure permanent placement is more than a house with four walls.

Rather, it generally encompasses a stable environment where a child will live in safety

with one or more dependable adults who will provide for the child's needs."  *M.B.* at ¶

56.

{¶34} In the case before us, clear and convincing evidence supports the trial

court's finding that the child needs a legally secure permanent placement and that he

can only achieve this type of placement by granting the agency permanent custody.  At

the time of the permanent custody hearing, appellant remained in a residential

treatment facility and expected to be discharged within a couple of months.  However,

the trial court expressed doubt about appellant's ability to provide the child with a legally

secure permanent placement, given that he had lost custody of at least one other child

and had yet to prove that he could remain sober once he no longer lived in a residential

treatment facility.

e.  R.C. 2151.414(E)(7) to (E)(11)

{¶35} The trial court also found that two of the factors listed in R.C.

2151.414(E)(7) to (11) apply:  R.C. 2151.414(E)(10) and (11).  The court found that the

child's mother had abandoned the child and that both parents previously had their parental rights regarding at least one other child involuntarily terminated.

{¶36} Based upon all of the foregoing circumstances, the trial court could have formed a firm belief that placing the child in the agency's permanent custody is in his best interest.  Thus, its judgment is not against the manifest weight of the evidence.

{¶37} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error.

CONCLUSION

{¶38} Having overruled appellant's sole assignment of error, we affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

### **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge




**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**